Wilfred A. Waltemade, J.
With the termination of the United States of America’s involvement in the Vietnam hostilities, another “ time of war ” era has been concluded with respect to veterans’ preference benefits as provided for in section 85 (subd. 1, par. [c]) of the Civil Service Law and section 6 of article V of the New York State Constitution.
In the case at bar, the fact of this petitioner’s long service away from his home and employment during the Vietnam War, is considered by this court to be an overwhelming and compelling circumstance which merits careful examination and distinguishing from the several appellate decisions, including the most recent holding of the Court of Appeals in the Matter of Rahill v. Bronstein (32 N Y 2d 417 [May 31, 1973]).
Without doubt, much of the nonveteran population of this State has always resented the preference given to veterans in civil service, whether it be credit for the entrance or the promotion examinations. But it must be remembered that veterans’ preference was granted after thorough debate and is mandated, as the People’s choice, by both the New York State Constitution and the Civil Service Law.
The State Constitution provision (art. V, § 6) and the Civil Service Law (§ 85) both contain the pertinent definitions of those who are eligible for preference as veterans under civil service. Section 13-a of the G-eneral Construction Law is not a part of the basic law which sets forth the requirements for veterans’ preference.
*489 The misplaced definition of a veteran of the Armed Forces, sneaked into the General Construction Law as section 13-a, rather than by amendment of section 6 of article V of the New York State Constitution, is merely a feeble attempt to limit what the People of our State have earlier adopted as their preference by constitutional amendment.
If the definition as contained in section 13-a of the General Construction Law is intended to apply to the weekend warrior or even the vacation (two-week annual duty) gladiator, then well and good. Certainly, the People and the Legislature never intended that Larocca, who left the comforts of home in Queens County, New York, and his employment, for the rigors of camp life at the Memphis Naval Air Station for six continuous months during the Vietnam War, was to be denied the benefits accorded by law to veterans.
This application for a judgment pursuant to CPLR article 78 seeks to vacate and annul a determination by the respondents which denied to the petitioner his claimed veterans’ preference credits on a competitive civil service promotion examination.
The petitioner is employed by the City of New York in the position of Senior Accountant. He took a competitive examination for promotion to Senior Accountant-Group Chief. The petitioner claimed veteran’s preference credit based on his active military service from May 8, 1963 to November 7, 1963. The eligibility list for Examination No. 8631 at first ranked the petitioner upon recognition of his veteran’s preference credit. On a revised list, the petitioner was denied the veteran’s credit. Petitioner now seeks to overturn the decision of the respondents, on the basis of his service in the Navy on active duty during time of war, pursuant to section 6 of article V of the New York State Constitution and section 85 of the Civil Service Law.
The petitioner entered the United States Naval Air Reserve in Brooklyn, New York, on March 27, 1963. Thereafter, on May 8,1963, he was ordered to active duty at the United States Naval Air Station, Memphis, Tennessee, where he received ‘ ‘ boot training ” during his first four weeks. This is the basic training given to every Naval recruit. Thereafter, while still at the Memphis Naval Air Station, he was trained at the Naval Aviation Electronic Technician’s School and continued on active duty until he was ordered returned to United States Naval Air Station, New York, in Brooklyn, where he was released to inactive duty on November 7, 1963, and subsequently honorably discharged on March 26, 1971.
*490 It is admitted that the petitioner’s entire tour of duty occurred during a “ time of war ”, as defined by section 85 (subd. 1, par. [c]) of the New York Civil Service Law: “ The term 1 time of war ’ shall include the following wars for the periods herein set forth: * * * (4) Hostilities participated in by the military forces of the United States, from the first day of- January, nineteen hundred sixty-three to the first day of February, nineteen hundred seventy-three.”
The respondents revoked the earlier veteran’s preference accorded to the petitioner, claiming that his active duty service in the Navy was for training purposes. The respondents maintain that section 13-a of the New York General Construction Law bars the granting of the preferential status to the petitioner.
The respondents do not deny that the petitioner is a veteran of the armed services who served his country during the time of the Vietnam War.
Section 6 of article V of the State Constitution provides inter alla that: “ any member of the armed forces of the United States who served therein in time of war, who is a citizen and resident of this state and was a resident at the time of his entrance into the armed forces of the United States and was honorably discharged or released under honorable circumstances from sucb service, shall be entitled to receive five points additional credit in a competitive examination for original appointment and two and one-half points additional credit in an examination for promotion ’ ’. (Italics supplied.)
Section 85 (subd. 1, par. [a]) of the Civil Service Law defines a “ veteran ” to: “ mean a member of the armed forces of the United States who served therein in time of war, who was honorably discharged or released under honorable circumstances from such service, who was a resident of this state at the time of entrance into the armed forces of the United States and who is a citizen and resident thereof at the time of application for appointment or promotion * * * as the case may be.” (Italics supplied).
Section 13-a of the General Construction Law provides: “ ‘ Armed forces of the United States ’ means the army, navy, marine corps, air force and coast guard, including all components thereof, and the national guard when in the service of the United States pursuant to call as provided by law. Pursuant to this definition no person shall be considered a member or veteran pi the armed forces of the United States unless his or her service therein is or was on a full-time active duty basis, *491 other than active duty for training.” (Eff. April 16, 1956; italics supplied).
In determining the legislative intent in the enactment of the foregoing provision, the courts must look to the intent of the People in approving section 6 of article V of1 the State Constitution. The courts, in Matter of Rubin v. Conway (273 App. Div. 559, affd. 298 N. Y. 711) had occasion to construe the veterans’ preference provisions of the Constitution. In that case, the petitioner was a member of the United States Coast Guard Reserve during World War II. As such he was only subject to part-time duty, not to exceed four days each month, without pay. Throughout the period of his service, he continued his civilian pursuits as a patrolman in the Village of Ossining, New York. His service in the United States Coast Guard neither took him away from his home and family nor from his employment for any extended period of time. In denying him veterans’ preference, the court wrote (p. 561): “Any preference is of course repugnant to the theory of civil service. In the case of veterans, it is justified equitably and morally by the sacrifice and disruption of normal civil life which accompanied full time military service. No such justification exists in the case of those who, like the petitioner, gave only temporary, intermittent service, on a basis which left their civilian lives and pursuits practically unaltered. The preference of those who ‘ served ’ in time of war was intended only for the benefit of those whose whole time and effort were required by or rendered available to the armed forces.” (Italics supplied).
In Mitchell v. Cohen (333 U. S. 411), the Supreme Court of the United States construed the provisions of the Federal Veterans’ Preference Act which is similar to New York’s law on the subject. In that case, the petitioner was a member of the Voluntary Port Security Force of the United States Coast Guard Reserve. He served on a part-time basis and because of the small number of hours of service, the petitioner there was able to continue his regular civilian employment with little or no interference. The court, in denying Mitchell veterans’ preference, wrote (p. 419): “ Throughout the legislative reports and debates leading to the birth of this statute [there] is evident a consistent desire to help only those who had sacrificed their normal pursuits and surroundings to aid in the struggle to which the nation had dedicated itself.”
The petitioner herein is entitled to veterans’ preference because: “it is justified equitably and morally by the sacrifice and disruption of normal civil life which accompanied full time *492 military service.” (Matter of Rubin v. Conway, 273 App. Div. 559, 561, affd. 298 N. Y. 711, supra).
This same doctrine is enunciated in Mitchell v. Cohen (supra, p. 419): “ [there] is evident a consistent desire to help only those who had sacrificed their normal pursuits and surroundings to aid in the struggle to which the nation had dedicated itself ’ ’.
It is necessary to observe, that the Armed Services, in this instance the Navy, had the prerogative administratively to order Larocca, a recruit, or any serviceman, to perform whatever duty was necessary to complete its objective. But that control over the serviceman, which may require active duty to receive basic training, and specialized training during time of war, may not be seized upon by the Legislature, the Civil Service Commission, or even the courts, as a basis for a denial of rights which accrue when the serviceman turns veteran, upon completion of honorable Federal service during time of war.
Status as a veteran is established by honorable active Federal service in some branch of the Armed Services during time of war. When the active tour of duty is followed by the honorable discharge or honorable release to inactive duty, the serviceman’s status as a veteran has vested. His rights as a veteran cannot be divested or delimited by the State Legislature’s enactment of a definition, which is now seized upon by the respondents, to deny to this veteran the benefits of the Civil Service Law by establishing a new category of veterans (those who served during time of war on active duty for training purposes).
If it is to be argued that Larocca’s six months’ service was all spent in training and not in combat, we should readily recall the number of men who lost their lives even while in training. If it is urged that his tour of duty was all “ Stateside ” training, we would have to ponder whether it is the type of service which controls, or whether the submission to the full-time command of the military and to its orders and directions which should determine whether veteran status is attained after honorable service during war time. If it is the type of service performed that dictates the basis for the reward in civil service credit, then everything pales and dissolves when we weigh the personal sacrifices of those who valorously paid with their lives in time of war.
Mindful of their supreme service, we now have the opportunity to litigate and decide the rights of living veterans.
Either the Legislature intended to foreclose the occasional or intermittent service, as a basis for point reward in civil serv *493 ice standings, or, they have attempted to classify veterans according to the type of duty performed while in service in war time. This latter action would be unconstitutional. Usually those who confer a bounty on others should be able to designate the beneficiaries. The rule is different when the grantor is the body politic and the recipients’ rights to participate in the largess are protected by constitutional guarantees.
The New York State Attorney-General in his opinions recognizes that service with the State military, unless the unit has been Federalized, does not confer veteran status for civil service credit.
His viewpoint is correct and consonant with the intention of the People of this State to confer the preference provisions only on those who have, in time of war, served our country (not merely the State) by subjecting themselves to service in the Armed Forces and under the exclusive command and orders of the Federal Government.
By what warrant then does the State Legislature attempt to intervene in the command of the Federal forces, by legislative fiat, revoking veteran status of those who have responded to the call to active duty to be trained so that they can better serve their country and better protect themselves when called to battle.
Larocca complied with the Navy’s orders to active duty (see Exhibit No. 1 to petition [DD Form 214, especially items numbered 21, 22, 23, 24b]), viz.:

He served continuously at the Naval Air Technical Training Center, Memphis, Tennessee, from May 8, 1963 to November 7, 1963 when he was ordered to return to the United States Naval Air Station, Brooklyn, New York.
During this six-month training, his “ shipmates ” were those who had enlisted for a two- or four-year tour of duty. All lived together, shared the same barracks and underwent the same training. The petitioner was subject to the Uniform Code of Military Justice, as were members of the regular United States Navy, and his reserve unit was subject to orders transferring it to other places and duties. The fact that such orders did not *494 materialize does not in any way diminish the honorable service he rendered The military service which generates veterans’ preference is not determined by the administrative nomenclature employed by the military, but rather by the total" and continuous exclusive control and direction that the command exercises over the activities of the serviceman while on active duty.
By the statutory definition contained in section 13-a of the General Construction Law the Legislature cannot limit or restrict the veterans’ vested benefits granted by the People of the State of New York as expressed in section 6 of article V of the State Constitution. To adopt the interpretation of section 13-a of General Construction Law and apply it in the instant case, as urged by the respondents, would do violence to the State Constitution and to the principles enunciated in Matter of Rubin v. Conway (273 App. Div. 559, affd. 298 N. Y. 711, supra). This court concludes that the legislative intent in enacting section 13-a was to deny veterans ’ preference to the weekend warrior, who was required only to attend occasional night drills or instructions, and/or a two-week training encampment.
The implication is patently clear that the Legislature intended that Federal military service, intermittent and noi seriously disruptive of the reservist’s normal life or civilian employment, was not to be the basis for awarding veterans ’ benefits. There is no substantive difference in the nomenclature employed by the Armed Services classifying Larocca’s six months’ continuous duty, in time of war, as “ active duty ” or ‘ ‘ active duty for training ”. In either classification, his normal civilian life and employment were disrupted for this extended period.
To deny Larocca’s application for the veterans’ credit on his promotional examination would run contrary to the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York State Constitution, both of which guarantee equal protection of the laws. Equal justice under the law has been the goal of the courts in this country since it was founded. We have the opportunity now to do just that. Simple justice, equally applied, allows no alternate course. We must proceed straight ahead to bestow upon this Navy veteran his rightfully earned two and one-half additional points on the civil service promotional examination (Civil Service Law, § 85, subd. 2).
Long ago, the Legislature did have the alternative not to enact legislation beneficial to the veteran — but the People demanded otherwise, and the Legislature responded admirably. It may not now minimize or restrict the benefit by segregating certain *495 honorably discharged veterans, who were administratively restricted in their duties by lawful command of the military.
The court is conversant with the recent decisions in Matter of Rahill v. Bronstein (32 N Y 2d 417, affd. 40 A D 2d 636), and Matter of Loughran v. Bronstein (41 A D 2d 1026). The facts in both of those cases are distinguishable from the facts in the ease at bar. In both Rahill and Loughran, the records do not reflect that any of those petitioners, unlike the petitioner in the case at bar, served a six-month tour of duty during a statutorily defined period of ‘1 time of war ’ ’. For all that appears, their military service was performed on occasional night-time or wéekend drill, and annual two-week summer encampment. The court must therefore conclude that the decisions reached by the courts in Rahill and Loughran were based on the facts in those two cases, and were not intended to be applicable to the facts in the case at bar. Matter of Sullivan v. Hoberman (34 A D 2d 6, affd. 28 N Y 2d 667) concerned a soldier who was on a two-week stint when he was injured.
Accordingly, the court finds that the respondents acted in an arbitrary, capricious and illegal manner in denying the petitioner veteran’s preference. The petition is therefore granted.